**Leroy DAVIS et al.,
Plaintiffs-Respondents,**

v.

**Samuel MOORE, Defendant-Appellant.**

No. 40188.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 2, 1980.

James P. Gamble, St. Louis, for defendant-appellant.

Eugene Buder, St. Louis, for plaintiffs-respondents.

KELLY, Chief Judge.

Samuel Moore, the appellant, brings this appeal from a denial of his post-trial motion to set aside a default judgment of the Circuit Court for the County of St. Louis setting aside a Collector's Deed to Lot 42 in Block 4 of Kentland Subdivision, the street address of which is 5507 Maguire Avenue, Kinloch, Missouri, and a judgment of the Circuit Court for St. Louis County entered June 26, 1972, quieting title in said property in Mr. Moore, and assessing actual damages in the amount of $2973.91 and punitive damages in the amount of $3000.00, together with costs against him, or, in the alternative, to grant him a new trial.

On appeal, Mr. Moore raises five points of alleged error which he claims entitle him to an order remanding the cause to the trial court with direction to enter judgment for him quieting title to the subject property in him, or, in the alternative, to a reversal of the trial court's judgment on the grounds that the trial court abused its discretion in denying his post-trial motions and that the cause be remanded to the trial court for a new trial.

Appellant's first point is that the trial court abused its discretion in overruling his alternative motions to set aside the default judgment or for a new trial because at the time the trial court entered its judgment, he was not in default.

In view of appellant's first point we deem it necessary to set forth a detailed statement of the facts relative to the issue therein raised.

On August 8, 1974, respondents instituted this action against the appellant and one Roger Larson, on the theory that the two conspired to defraud the respondents of the subject property by having Larson, in his official capacity as Deputy Tax Collector of the City of Kinloch, misrepresent to the respondents that no taxes were due on the property so as to enable the appellant to purchase said property at a tax sale. On September 13, 1974, the appellant filed a motion to dismiss said Petition claiming it failed to state a claim upon which relief could be granted. Thereafter on October 22, 1976, the respondents filed simultaneously a motion requesting leave to add parties, file an amended petition and transfer the cause to equity together with an amended petition.[1] The transcript on appeal reflects that on that same date the appellant consented to the motion. However, appellant added the following comment to his consent: "but renews his [appellant's] objection to any further proceedings in this action."

The amended petition was in two counts; the first Count being in equity and claiming that the tax sale was held in violation of § 94.320 RSMo.1969 and ordinances of the City of Kinloch. This Count contained an offer by respondents to refund to appellant all taxes that he had already paid. Further, it alleged that the appellant obtained service by publication in the quiet-title suit by "falsely and fraudulently" swearing that the heirs of Charles and Clara Davis were unknown to him when in fact he knew respondent Leroy Davis for several years. The prayer in Count I requested a judgment and decree setting aside the tax sale and the judgment to quiet title as well as actual damages in the amount of $100.00 and punitive damages in the amount of $10,000.00. Count II of the Petition, in the alternative, re-alleged the facts in Count I but requested only actual damages consisting of the fair market value of the house

1. By leave of court, the respondents further amended their petition by interlineation on January 7, 1977.

($10,000 which included $6,000 in labor and materials put therein by the plaintiff) and punitive damages in the amount of $10,-000.00.

The transcript reflects a minute entry of January 18, 1977, whereby respondents dismissed their action against defendant Roger Larson. The transcript also contains a letter written to appellant by respondents' attorney dated March 8, 1977, sent by certified mail and a receipt bearing appellant's signature. In this letter, respondents' attorney acknowledged the withdrawal of appellant's lawyer from the case on October 25, 1976, and stated that he was enclosing a copy of the Amended Petition which appellant's attorney had received before he withdrew. Respondents' attorney also enclosed a copy of a Second Amended Petition which he stated he intended to file and notified the appellant that the case had been set on the Equity Docket of Division 10 of the St. Louis County Circuit Court for April 25, 1977.

On April 27, 1977, respondents filed their Second Amended Petition wherein the amounts of actual damages were increased in both Counts to reflect the amount of monthly rent appellant had collected after July of 1972, minus the taxes he had paid on the property. A certified letter in the transcript dated June 22, 1977, from respondents' attorney to the appellant reflects that appellant failed to appear on April 25, 1977, and as a consequence the case was reset on the Equity Docket of Division 10 of the St. Louis County Circuit Court for September 26, 1977. In this letter appellant was also advised that the Second Amended Petition "had been filed with the Court ..." On September 26, 1977, a hearing was held, but appellant again failed to appear, and at this hearing, only the respondents presented evidence.

On November 1, 1977, the trial court filed its Findings of Fact, Conclusions of Law, and Judgment and Decree, wherein it vest-ed title to the property in question in the respondents; cancelled and set aside the August 25, 1969, tax sale of said property, the collector's deed to said property, and the February 8, 1972[2] judgment quieting title to said property in the name of appellant Samuel Moore; and awarded judgment for respondents and against appellant in the amount of $2,973.91 compensatory damages and $3,000.00 punitive damages.

On November 16, 1977, another attorney entered his appearance as counsel for appellant, and on that same date, filed alternative motions to set aside the default judgment or for the granting of a new trial on the grounds that fewer than fifteen days had pressed since entry of the default judgment; that he had filed his motion to dismiss within 30 days after service of summons and petition and that the motion had not been either granted or denied at the time of the court's rendering of a default judgment against him; that he believed in good faith that the trial court lacked the power to set aside the quiet-title judgment; that he had a meritorious defense; that the court failed to allow a set-off for the value of improvements which he had made; and that respondents failed to prove that he had acted maliciously toward them.

■ Where a motion to set aside is filed within the period provided for filing motions for new trial, the appellate courts of this state, usually without any discussion of this question, have uniformly considered such motions as being timely and as effective as though denominated a motion for new trial. *Gorzel v. Orlamander*, 352 S.W.2d 675, 677[1] (Mo.1961). Further, said motions have the effect of vesting the trial court with jurisdiction to rule the motion upon its merits within the period of 90 days after it was filed. *Id.* at 678. Here, the motions, set in the alternative, were timely overruled on the 90th day after filing.

■ The motions, although titled in the alternative, sought the remedy of a motion

---

**2.** Although this judgment and decree designates February 8, 1972 as the date upon which the appellant obtained judgment quieting title in himself, the Findings of Fact correctly re-flect, as is evident from the transcript on appeal, that the quiet title judgment was entered on June 26, 1972 and that the appellant filed suit on February 8, 1972.

to set aside. Therefore, on appeal, we must be controlled by those principles applicable to an appeal from a motion to set aside a default judgment. We may not interfere with the ruling below unless the record reveals that the trial court abused its discretion and rendered a judgment which was clearly erroneous. *Ward v. Cook United, Inc.,* 521 S.W.2d 461, 470[10] (Mo.App.1975). In order to reverse the trial court's refusal to set aside its judgment against the defaulting party, that party must show as basic prerequisites: 1) that he had a meritorious defense, and 2) that good reason or excuse existed which could explain away the default. *In re Marriage of Millsap,* 559 S.W.2d 69, 71[2] (Mo.App.1977).

■ Appellant initially contends that the trial court's judgment was erroneous because he was never in default because his motion to dismiss respondents' original petition had never been ruled on by the trial court and therefore no responsive pleading was yet due and therefore he could not be in default.

Respondents concede that appellant's motion to dismiss their original petition for failure to state a claim upon which relief could be granted was well taken because of their failure to allege therein an offer to refund to appellant all taxes he had paid together with interest thereon from the date of payment of such taxes to the date of judgment as mandated by § 140.600 V.A. M.S. They recognized this defect and, without calling the motion for argument, filed their amended petition with consent of appellant and his then counsel of record, curing this defect.

It is appellant's contention that it was not necessary for him to either refile the motion to dismiss which he had filed against the original petition, or file a new motion to the same effect because the minute entry of October 22, 1976, whereby he consented to respondents' filing their Amended Petition, did renew his previously filed motion to dismiss because it also contained the following: "but renews his objection to any further proceeding in this action," constituted a renewal of that motion against respondents' amended petition and extended to their Second Amended Petition also.

We agree with appellant that he was not in default prior to respondents filing their amended petition, since no responsive pleading was required because his motion to dismiss the original petition was still pending. Rule 55.25(c).

However, we disagree with his argument that the motion to dismiss filed against the original petition was renewed by the clause "but renews his objection to any further proceeding in this cause" contained in the minute entry of October 22, 1976. This phrase is, at best, ambiguous in the light of the events which followed.

From the record we are unable to ascertain what "objection" it was appellant referred to. Clearly, a motion authorized by Rule 55.27(a)(6) is not an "objection." Within three days after the filing of this consent by the appellant his attorney of record withdrew. It may well be concluded, as respondents argue, that the phrase was entered to afford appellant time to retain new counsel. Because of the ambiguity we cannot say that the minute entry constituted an attack on the amended petition nor on the later filed Second Amended Petition for failure to state a claim. If appellant wanted to delay the time for filing an Answer to the Second Amended Petition and thereby avoid being in default, that is what he should have done.

Appellant claims that the service of respondents' Second Amended Petition was defective. The basis for this claim is that the copy of respondents' Second Amended Petition was not filed in court until April 27, 1977, almost 7 weeks after he had received a copy of it with the letter of March 8, 1977, referred to hereinabove, and therefore was not in compliance with the requirement of Rule 43.01(f) that when provision is made for the time of filing papers, and none is made for the time of service thereof, copies shall be delivered in person or by mail on the day of filing or as soon thereafter as can be done.

This question, so far as we have been able to ascertain, has not been decided by the appellate courts of this state; i. e. whether serving a defendant with a copy of an amended petition prior to its filing renders such service nugatory.

Whether appellant was personally served we cannot determine from this record; nevertheless appellant appeared and filed a motion under Rule 55.27(a)(6) for failure to state a claim upon which relief can be granted. He further consented to the filing of a first amended petition and acknowledges that he received a copy of the Second Amended Petition with the information that respondents' counsel intended to file same. He also acknowledges in his brief that he did receive, on June 28, 1977, a copy of a letter, incorporated into the transcript, dated June 22, 1977, and sent to him "Certified Mail, Return Receipt, Addressee Only," wherein he was notified by respondents' counsel that the second amended petition was filed with the court on April 25, 1977, and that the case had been reset on the Equity Docket of Division 10 of the St. Louis County Circuit Court for 9:30 a.m., September 26, 1977.

Rule 55.33(a) provides: "A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within ten days after service of the amended pleading, whichever period may be longer, unless the court orders otherwise." Rule 74.045 provides: "If a defendant shall fail to file his answer or other pleading within the time prescribed by law or the rules of practice of the court ... an interlocutory judgment shall be given against him by default."

Despite the fact he had been served with a copy of the Second Amended Petition respondent informed appellant was going to be filed, and the receipt of the letter of June 22, 1977, whereby he was advised that this amended petition had been filed and the cause was set for hearing on September 26, 1977, appellant sat idly by and did nothing.

Our conception of the reason for the provision of Rule 43.01(f) that copies of papers filed be served on the opposing party by delivery of it to said party in person or by mail "on the day of filing or as soon thereafter as can be done" is to afford said party ample notice so that the party may respond thereto or come into court and be heard before any action is taken on said papers.

■ Here appellant already had the Second Amended Petition and was notified after it was filed in court, albeit it was approximately sixty days after the pleading was filed. Nevertheless, appellant has failed to demonstrate how he was prejudiced by these circumstances. He had sufficient time—some 90 days—after receipt of the letter on June 28, 1977, to retain counsel, appear and present his defense, if he had any.

Under these circumstances we hold that the spirit, if not the letter, of Rule 43.01(f) was substantially complied with, and there was no error in the trial court's denial of appellant's posttrial motions.

■ Appellant cites "exacerbating circumstances" which he contends entitle him to reversal of the trial court's judgment. These were, for the most part, the remaining grounds contained in his alternative motions to set aside the default judgment etc. noted hereinabove, plus the fact that he was without representation between October 25, 1976—when his attorney of record withdrew—and November 16, 1977—when his new counsel filed his post-trial motions.

With respect to appellant's lack of representation and his opinion that the default judgment he had obtained against the respondents could not be set aside, we find that there are not sufficient grounds to demonstrate any abuse of discretion in the trial court's refusal to set aside the default judgment from which he has appealed. From the record we discern that appellant has previous litigation experience and was not naive to the ways of legal process and that the failure of a party to respond may well result in the entry of a default judgment against said party. He had been a beneficiary of this same procedural pitfall. Despite two notifications that the cause

was set for a hearing he chose not to appear nor did he retain counsel to replace his former counsel who had withdrawn from the fray or to keep abreast of developments in the cause; rather, he chose to ignore the entire matter until after the default judgment was entered against him. Under these facts we find no reasonable excuse for setting aside the default. *Party v. Gagne*, 404 S.W.2d 414 (Mo.App.1966).

The next circumstance raised by appellant is that the trial court failed to enter an interlocutory judgment against him prior to entering the judgment from which he has appealed in violation of Rule 74.045.

■ A rule or statute which provides for an interlocutory judgment is for the benefit of the plaintiff, *Cornoyer v. Oppermann Drug Co.*, 56 S.W.2d 612, 613 (Mo. App.1933), and the purpose of an interlocutory judgment is to preclude a defaulting defendant from thereafter filing an Answer or pleading a defense to plaintiff's pleaded right of recovery. *Sumpter v. J. E. Sieben Construction Co.*, 492 S.W.2d 150, 154[14] (Mo.App.1973). Therefore, if plaintiff fails to take an interlocutory judgment by default when the default occurs and waits for his case to come to trial to prove his damages thereby allowing the defendant to appear and seek leave to file his answer, but nevertheless, the defendant remains in default, there is no reason why plaintiff may not prove up his damages and obtain his final judgment by default even though no interlocutory judgment was ordered. *Sumpter v. J. E. Sieben Construction Company*, 492 S.W.2d 150, 154–5[16] (Mo.App. 1973); *Cornoyer v. Oppermann Drug Co.*, *supra*, l.c. 613[1, 3]. Here respondents proved-up their damages at the hearing on September 26, 1977, and thereafter were granted their judgment. There is no merit to this contention of appellant.

■ The next "circumstance" appellant argues entitles him to have this judgment set aside is that the effect of the trial court's denial of his post-trial motions is that he was thereby denied the opportunity to recover the value of his improvements to the property in this action. He concedes that he is not denied any opportunity to recover for these improvements and that he may do so in a separate cause of action.[3] We conclude therefore that under the circumstances of this case the trial court did not, on these grounds, abuse its discretion in denying appellant's post-trial motions.

■ Appellant's final circumstance which he contends is cause for reversing this judgment is that because of the defective service of respondents' Second Amended Petition the relief granted respondents exceeds that demanded in the last pleading which was properly served, i. e. respondents' Amended Petition.

The relief granted respondents against which this argument is directed is the award of $2,973.91 actual damages. The prayer in respondents' amended petition was for $100.00 actual damages and $10,-000.00 punitive damages in Count I of said petition and $10,000.00 actual damages and $10,000.00 punitive damages in Count II of the petition. In the Second Amended Petition respondents prayed for actual damages in an amount of all rentals Mr. Moore had received from the property after an accounting for same, or a sum of $4,845.00 plus $85.00 a month after March, 1977, for such rents, less any amount of taxes with interest he had paid to date of judgment and $10,000.00 in punitive damages in both Counts.

The "defective service" appellant refers to is the failure of respondents to file their Second Amended Petition until almost seven weeks after he had received a copy of said petition via certified mail. We have already held that he could not have been prejudiced by being notified of the proposed amendment earlier than the Rule required.

Appellant relies on *Rook v. John F. Oliver Trucking Company*, 505 S.W.2d 157 (Mo. App.1973). That case is inapposite because the trial court there awarded damages for attorney's fees in a tort case, which it could not legally do, and also awarded damages in

---

**3.** See *Snadon v. Gayer*, 566 S.W.2d 483, 495 (Mo.App.1978).

excess of the petition filed in the case. There was no amended petition in the case and the question before us here was not before the court in *Rook*.

We find no error.

Appellant's remaining Points Relied On present alleged defenses to the default judgment. Since he was, in fact, in default and because he has failed to demonstrate any excuse or reasonable neglect for being in default, he has failed to show he is entitled to have the default judgment set aside, and therefore it is immaterial that he may have a meritorious defense to respondent's claims. *Gregg v. Johnston*, 546 S.W.2d 754, 756 (Mo.App.1977). We need not therefore consider his remaining Points.

The judgment of the trial court is affirmed.

STEPHAN, P. J., and STEWART, J., concur.